IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01704-PAB-MEH

PAUL CUIN, individually and on behalf of the Estate of TIFFANY MARIE O'SHELL, and JACQUELINE CUIN, individually and on behalf of the Estates of ALYSSA O'SHELL and WILLIAM DAVID O'SHELL,

    Plaintiffs,

v.

ADAMS COUNTY BOARD OF COUNTY COMMISSIONERS, et al.,

    Defendants.

---

## ORDER OF PARTIAL DISMISSAL AND TO SHOW CAUSE

---

This matter is before the Court on defendants Adams County Board of County Commissioners and Adams County Board of Human Services' motion to dismiss [Docket No. 81]; defendant The Children's Hospital's motion to dismiss [Docket No. 82]; defendant Board of Regents of the University of Colorado's motion to dismiss plaintiffs' seventeenth claim for relief [Docket No. 83] and motion to dismiss plaintiffs' state law claims [Docket No. 84]; and defendants Sirotnak, Luna, Chiesa, and Faro's motion to dismiss [Docket No. 80]. The motions are fully briefed.

**I. BACKGROUND**[1]

William David O'Shell and Tiffany Marie O'Shell had a child by the name of Alyssa O'Shell on March 30, 2008. On June 16, 2008, the O'Shells noticed that Alyssa

---

[1]The following facts are drawn from plaintiffs' first amended complaint [Docket No. 78] and are presumed to be true for purposes of resolving the present motions.

became fussy when her right leg was moved.  The next day they brought Alyssa to a pediatrician, who referred Alyssa to The Children's Hospital ("TCH").  Doctors at TCH discovered that Alyssa had 11 fractures in her legs with no signs of any internal or external trauma.  The O'Shells were questioned about the fractures, but could not explain.

Individuals at TCH concluded that the fractures were likely the result of child abuse and recommended that Adams County Human Services be contacted.  Adams County began an investigation and immediately took Alyssa into emergency custody.  While Alyssa was in foster care and the investigation proceeded, the O'Shells investigated possible causes of Alyssa's injuries, discovering that such fractures could be caused by numerous genetic and bone disorders.  The O'Shells informed Adams County Human Services of these possibilities and requested they be considered.  Furthermore, a preliminary protective custody hearing was held in Adams County District Court on June 19, 2008.  The court ordered that emergency medical testing be conducted on Alyssa to determine possible causes of the fractures other than child abuse.[2]

On June 25, 2008, an Adams County Human Services employee informed plaintiff Jacqueline Cuin, Ms. O'Shell's mother, that the emergency testing of Alyssa had been scheduled for October 4, 2008.  Ms. Cuin asked why it could not be conducted sooner and received no explanation.  During the same conversation, the

---

[2]The O'Shells were permitted to visit with Alyssa on June 23, 2008.  The O'Shells noticed that Alyssa was dirty and smelly and reported their concerns to Adams County Human Services.  The O'Shells were not permitted another visit with Alyssa until July 17, 2008.

employee stated that additional fractures had been discovered.  The employee was unable to say whether those fractures predated Alyssa being taken into custody. Adams County Human Services never supplied this information to the O'Shells. Instead, Ms. Cuin informed Ms. O'Shell on June 27, 2008, and Ms. O'Shell took steps to independently schedule the medical test for July 14, 2008.

During this time, Adams County Human Services did not seriously consider alternative explanations for Alyssa's injuries.  It continued to believe Mr. O'Shell to be the prime suspect of child abuse, essentially presenting Ms. O'Shell with choosing between her child and husband.  Mr. O'Shell was faced with the prospect of admitting to felony child abuse in order to permit Alyssa to be returned to her mother.  On June 30, 2008, Mr. O'Shell took his wife's life and then committed suicide.

Sometime between June 30 and July 2, 2008, Alyssa's foster mother brought her to TCH.  Doctors at TCH recognized that something was seriously wrong with Alyssa and recommended to Adams County Human Services that she be given a "higher level of care."  Docket No. 78 at 17, ¶ 59.  On July 2, 2008, a pre-trial conference occurred during which plaintiffs requested custody of Alyssa.  Adams County Human Services opposed that request, stating that plaintiffs were suspects in the child abuse investigation.  However, on July 3, the police reported that plaintiffs were no longer suspects.  Yet, on July 8, Adams County Human Services told plaintiffs that there was "no possibility" of their getting custody of Alyssa if it was determined that Alyssa's injuries were caused by a genetic disease because of the extensive care that would be required.  See Docket No. 78 at 18, ¶ 63.  During the same conversation, plaintiffs were informed that the reason Alyssa's testing was initially scheduled for October 4 was due

3

to the foster mother's schedule.

On July 9, 2008, Alyssa was diagnosed with Type 1 Spinal Muscular Atrophy, a genetic disease explaining her fractures. On July 15, Adams County Human Services recommended to the court that plaintiffs be afforded visitation with Alyssa, but did not inform the court that plaintiffs had been cleared of suspected child abuse. At a hearing on July 16, Adams County Human Services continued to oppose plaintiffs receiving custody of Alyssa. The court, however, ordered that custody be granted to plaintiffs. On October 28, 2008, Alyssa died as a consequence of her genetic disease.

Plaintiffs initiated this action in state court on June 18, 2010. The case was removed to this Court on July 19, 2010. *See* Docket No. 1. On October 13, 2010, plaintiffs filed a first amended complaint [Docket No. 78], in which they assert various state and federal claims against Adams County Board of County Commissioners and Adams County Board of Human Services, on behalf of Adams County Department of Human Services, The Children's Hospital, and Board of Regents of the University of Colorado, as well as a number of named and unnamed individuals.

## II. STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV,*

*L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted). At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

### III. DISCUSSION

#### A. Section 1983 Claims

##### *1. Adams County*

In their seventh claim for relief, plaintiffs have sued defendants Adams County Board of County Commissioners and Adams County Board of Human Services (the "Adams County defendants"), naming both "on behalf of the Adams County Department of Human Services," pursuant to 42 U.S.C. § 1983. Section 1983 provides a claim for relief against "any person who, under color of state law, deprives another of rights protected by the Constitution." *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009). "[T]he State and arms of the State . . . are not subject to suit under § 1983." *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). The Adams County defendants argue that, because they are arms of the state, plaintiffs' § 1983 claim against them must be dismissed for failure to state a claim.

In response, plaintiffs do not dispute that the Adams County defendants are arms of the state.[3] Instead, they contend that, because the Adams County defendants removed this action to this Court, they waived their Eleventh Amendment immunity to

---

[3]The Adams County defendants cite Colorado state court authority for the proposition that the Adams County Department of Human Services is an arm of the state and argue that, "[a]lthough the Tenth Circuit has not addressed whether a department of human services is a 'person' for the purposes of section 1983 litigation, the ruling of Colorado courts should be persuasive as to whether the department is an arm of the State." Docket No. 81 at 3 (citing *Pierce v. Delta Cnty. Dep't of Social Services*, 119 F. Supp. 2d 1139, 1147 (D. Colo. 2000)); *see Wigger v. McKee*, 809 P.2d 999, 1004 (Colo. App. 1990).

suit. *See Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) ("A state's removal of a case to federal court is a voluntary invocation of federal jurisdiction sufficient to waive that state's Eleventh Amendment immunity."); *see also Wagoner County Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258-59 (10th Cir. 2009). However, the "Supreme Court has recognized a distinction between the immunity afforded by the Eleventh Amendment and the limitations in the scope of § 1983 arising from the terms of the statute." *Harper v. Colorado State Bd. of Land Comm'rs*, 248 F. App'x 4, 8-9 (10th Cir. 2007) (unpublished) (citing *inter alia Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003)). Even if the Adams County defendants waived their sovereign immunity, plaintiffs do not contend that the defendants are "persons" for purposes of the statute. *See Gean*, 330 F.3d at 766 ("Even if Tennessee's sovereign immunity has been properly waived or abrogated for the purposes of the federal statute the defendants allegedly violated, a § 1983 claim against the defendants in their official capacities cannot proceed because, by definition, those officials are not persons under the terms of § 1983."). The Court will, therefore, dismiss the seventh cause of action for failure to state a § 1983 claim against the Adams County defendants and its employees acting in their official capacities. *Cf. Ross v. The Board of Regents of The University of New Mexico*, 599 F.3d 1114, 1117 (10th Cir. 2010) ("It is undisputed that this suit names only agencies of the State of New Mexico and state employees in their official capacities. Thus, we conclude that the district court was correct in holding that the plaintiffs have failed to state a constitutional

claim upon which relief can be granted.").[4]

### 2. The Children's Hospital

TCH requests that the Court dismiss plaintiffs' twenty-sixth claim for relief, which is brought pursuant to 42 U.S.C. § 1983. Plaintiffs allege that TCH is a nonprofit corporation, *see* Docket No. 78 at 4, and TCH concedes that it is a "person" for purposes of § 1983. *See Lippoldt v. Cole*, 468 F.3d 1204, 1213-14 (10th Cir. 2006). It argues, however, that plaintiffs have failed to adequately allege that it was acting under color of state law, as required by § 1983. *See* 42 U.S.C. § 1983; *see West v. Atkins*, 487 U.S. 42, 48 (1988). The Court will not reach that argument,[5] given that TCH persuasively argues that plaintiffs' allegations improperly attempt to support § 1983 liability under a theory of *respondeat superior*. *Smedley v. Corrections Corp. of America*, 175 F. App'x 943, 946 (10th Cir. 2005) (unpublished) ("[A] private actor . . . 'cannot be held liable *solely* because it employs a tortfeasor – or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory.'") (quoting *Monell*

---

[4]Plaintiffs argue that other claims "potentially implicate" the Adams County defendants "as to liability and damages," such as the first, second, third, fourth, fifth, sixth, eighth, ninth, tenth, forty-seventh, and forty-eighth. Docket No. 86 at 4. The first through sixth and eighth through tenth claims do not name the Adams County defendants. They are brought against yet to be identified agents and employees of Adams County. However, for the reasons discussed below, the Court will allow the forty-seventh and forty-eighth claims, which arise under state law, to remain against the Adams County defendants at present.

[5]*Cf. Mehdipour v. Matthews*, 386 F. App'x 775, 778 n.3 (10th Cir. 2010) (unpublished) ("[P]laintiff's failure to properly allege a 'state action' in a § 1983 complaint strips the district court of subject matter jurisdiction only if jurisdiction is alleged under 28 U.S.C. § 1343(3). If, however, jurisdiction is alleged under 28 U.S.C. § 1331, the failure to properly allege a 'state action' warrants dismissal pursuant to Fed. R. Civ. P. 12(b)(6), rather than pursuant to Fed. R. Civ. P. 12(b)(1).") (citations omitted).

*v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original)).[6]

To hold TCH responsible for the conduct of its agents, plaintiffs must allege a TCH policy or custom that was a "'direct cause' or 'moving force' behind the constitutional violations." *Smedley*, 175 F. App'x at 946 (citations omitted). They have identified no such policy or custom. Instead, plaintiffs merely allege, in conclusory fashion, that TCH empoyees were "not properly trained" and "were not disciplined or corrected when they took unconstitutional or illegal action," and that such "actions evince an illegal and unconstitutional policy, practice, custom, or procedure." Docket No. 78 at 57-58, ¶ 241. Standing alone, such allegations merely identify the elements of a cause of action without any factual allegations demonstrating that plaintiffs' claim rises above the speculative level. *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphasis in original).[7] Consequently, the Court will dismiss

---

[6]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) ("Although the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants.") (footnote omitted).

[7]*Cf. Archuleta v. Correctional Healthcare Management, Inc.*, No. 08-cv-02477-REB-BNB, 2009 WL 1292838, at *3 (D. Colo. May 8, 2009) ("Nothing in

plaintiffs' twenty-sixth claim for relief as to defendant TCH. Furthermore, to the extent the twenty-seventh claim for relief can be construed as asserting a claim against TCH, *see* Docket No. 78 at 59, ¶ 247, it is also dismissed for the same reasons.

### 3. Board of Regents

The Board of Regents of the University of Colorado (the "Board") seeks dismissal of plaintiffs' seventeenth claim for relief, which is brought pursuant to 42 U.S.C. § 1983.[8] The Board, however, has not been named a defendant to that claim. Rather, plaintiffs assert it against "John Doe/Jane Doe, personally and individually, employees/agents of the Defendant University of Colorado." Docket No. 78 at 44. To the extent the claim has been brought against either the Board or its employees in their official capacities, plaintiffs may not assert it. Plaintiffs do not dispute that the Board is an arm of the state for purposes of § 1983. As the Court made clear above, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Court will therefore dismiss

---

the complaint tends to suggest that [defendant] had actual or constructive notice of any constitutionally problematic actions by its employees that it failed to address. Nor has plaintiff identified any specific way in which [defendant's] alleged failure to train or supervise its employees was potentially or actually deficient. Although the complaint parrots all the apposite legal buzzwords, it fails to allege a single fact demonstrating that plaintiff has a reasonable likelihood of mustering support for a cognizable Eighth Amendment deliberate indifference claim against [defendant].") (citation and footnote omitted).

[8]The Board filed a separate motion seeking dismissal of plaintiffs' state law claims [Docket No. 84]. As plaintiffs point out, the two motions, which are treated as a single motion, *see* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.A, exceed the page limitations imposed on motions to dismiss by the Court. *See id.* Plaintiffs' responses, however, also violate the Court's page limitations. The Court will consider the motions and responses, but reminds the parties of their obligations to comply with the Practice Standards of this Court.

plaintiffs' seventeenth claim for relief as to the Board and its employees acting in their official capacities.

### *4. John and Jane Doe Defendants*

In light of the foregoing, the only federal claims left in this action are brought against the "John and Jane Doe" defendants. There is no indication in the docket that plaintiffs have served these individuals with any of their pleadings. "If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Therefore, the Court will order plaintiffs to show cause why the claims against the John and Jane Doe defendants should not be dismissed without prejudice pursuant to Rule 4(m).

### B.  State Law Claims

Of plaintiffs' forty-eight claims for relief, forty-three arise under state law. On September 8, 2010, the parties filed a joint motion to stay discovery [Docket No. 48] pending resolution of the present motions to dismiss. The motion was granted on September 13, 2010 [Docket No. 62]. In their joint motion, the parties all expressed the view that, "[i]f the Court grants the Motions to Dismiss the federal claims, it is likely that the Court will decline to exercise its supplemental jurisdiction over the state law claims." Docket No. 48 at 3, ¶ 5. The parties did not address what, if any, effect the pending federal claims against the John and Jane Doe defendants, who are not subject to the present motions, have on the Court's exercise of jurisdiction. The parties appear to

assume that resolution of the entity defendants' motions to dismiss the federal claims eliminates the Court's original jurisdiction. For that reason, as well as plaintiffs' failure thus far to serve the John and Jane Doe defendants, the Court will deny the defendants' requests to dismiss state law claims, but will do so without prejudice to the renewal of those requests at such time as it is clear that the Court will continue to exercise supplemental jurisdiction over the claims.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant The Children's Hospital's motion to dismiss [Docket No. 82] is GRANTED in part and DENIED without prejudice in part. Plaintiffs' § 1983 claims against TCH and its employees acting in their official capacities in claim twenty-six are dismissed. TCH's request for dismissal of plaintiffs' state law claims is denied without prejudice to refiling at such time as it becomes clear whether the Court will retain supplemental jurisdiction over those claims. It is further

**ORDERED** that defendant Board of Regents of the University of Colorado's motion to dismiss plaintiffs' seventeenth claim for relief [Docket No. 83] is GRANTED. Plaintiffs' seventeenth claim for relief is dismissed as to the Board and its employees acting in their official capacities. It is further

**ORDERED** that Board of Regents of the University of Colorado's motion to dismiss state law claims [Docket No. 84] and defendants Sirotnak, Luna, Chiesa, and Faro's motion to dismiss [Docket No. 80] are DENIED without prejudice to refiling at such time as it becomes clear whether the Court will retain supplemental jurisdiction

over those claims.  It is further

**ORDERED** that, on or before **Friday, July 22, 2011**, plaintiffs shall show cause why their claims against the John and Jane Doe defendants should not be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m).  On or before that date, any party may also file a brief regarding the effect, if any, the pending federal claims against the John and Jane Doe defendants have on the Court's continued exercise of jurisdiction in this case, such briefs not to exceed five pages.

DATED July 11, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge